UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

JOHN DAZA,                                              CV-04678-10
                                                        MGC (GWG)
                        Plaintiff,

        -against-

PILE FOUNDATION CONSTRUCTION
COMPANY INC, ANTHONY RIVARA CONTRACTING,
LLC, URS CORPORATION, URS CORPORATION-NEW
YORK, THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF PARKS AND RECREATION,
THE NEW YORK CITY DEPARTMENT OF PARKS AND
RECREATION CAPITAL PROJECTS DIVISION,
THE NEW YORK CITY ECONOMIC DEVELOPMENT
CORPORATION, AECOM SERVICES, INC, AECOM USA,
INC. and the Barge "UNCLE LEO", its equipment, tackle
and appurtenances, in rem,

                        Defendants.

_____X


## F.R.C.P. RULE 56.1 STATEMENT

1.  I am a member of the law firm of HANNUM FERETIC PRENDERGAST &

MERLINO, LLC, attorneys for the defendants THE CITY OF NEW YORK, THE NEW YORK

CITY DEPARTMENT OF PARKS & RECREATION, THE NEW CITY OF NEW YORK

DEPARTMENT OF PARKS & RECREATION CAPITAL PROJECTS DIVISION AND THE

NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION and as such I am fully

familiar with the facts and circumstances of this matter from a review of the file maintained by

this office.

2.      This is a motion for summary judgment dismissing the claims by the plaintiff

against these moving parties which sound in common law negligence, as well as violations of

the Labor Law of the State of New York §§240, 241(6) and 200.

3.      In the alternative, this moving party seeks judgment over and against the co-defendants in this matter including PILE FOUNDATION, URS CORPORATION AND AECOM SERVICES, INC. based upon the contractual obligation between the parties.

4.      Plaintiff's counsel commenced this action by the service of a Summons and Complaint which was amended on two separate occasions to include allegations against additional parties brought into this litigation.  Attached hereto as **EXHIBIT "A"** is a copy of the plaintiff's Second Amended Complaint which was plaintiff's last Amended Complaint and the one in effect before this Court.

5.      Within said document the seventh cause of action which alleges the claims against the CITY OF NEW YORK, THE DEPARTMENT OF PARKS & RECREATION AND THE NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION are the only claims within said complaint as against these moving parties.  Plaintiff's complaint sets forth claims under the Labor Law of the State of New York §§200, 240 and 241(6).

6.      These moving parties have specifically denied the plaintiff's allegations of negligence and violation of statute as set forth in said Seventh Cause of Action and now seek to dismiss plaintiff's complaint and all cross claims alleged herein.  Attached hereto as **EXHIBIT "B"** is a copy of the Answer of THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF PARKS & RECREATION, THE NEW YORK CITY DEPARTMENT OF PARKS & RECREATION CAPITAL IMPROVEMENT DIVISION AND THE NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION.

7.      In addition to dismissing plaintiff's complaint these moving parties also seek judgment over and against the co-defendants on the cross claims included within said Answer to the Second Amended Complaint as against PILE FOUNDATION, URS CORPORATION AND

AECOM entities.   Attached hereto as **EXHIBIT "C"** is a copy of the Answer of PILE FOUNDATION; as **EXHIBIT "D"** the Answer of URS CORPORATION; and **EXHIBIT "E"** the Answer of AECOM SERVICES, INC.

## BACKGROUND

8.      This is an action for personal injuries allegedly sustained by the plaintiff on or about May 20, 2010 when a crane block on which the plaintiff was performing maintenance in recabling the block with a new cable rolled over onto the plaintiff's ankle.  As a result of the incident the plaintiff sustained a fracture to the ankle requiring surgical intervention.

9.      This incident occurred during the building of the East River Waterfront Esplanade project for THE CITY OF NEW YORK DEPARTMENT OF PARKS when the contractor, PILE FOUNDATION whose barges were moored in the East River was performing work along the bulkheads installing new piers and driving piles along the East River as part of the East River Park project.

10.      At the time of the incident the plaintiff was on a barge identified as the Uncle Leo that was moored or spudded off shore 60 to 80 feet.  Between the shoreline and the Uncle Leo was a barged identified as a foam barge to which a gangway from shore allowed people to access the foam barge and thereafter a crane mat laid down gave access to the Uncle Leo.  (See the testimony of Brian Nee attached hereto as **EXHIBIT "F" p. 94).**

11.      Prior to this incident occurring the City defendants entered into a contract with URS to perform supervisory services for the renovation of the East River Esplanade Park project.  Attached hereto as **EXHIBIT "G"** is a copy of the DEPARTMENT OF PARKS & RECREATION CAPITAL PROJECTS DIVISION, Contract number CNYG-2800M marked as EXHIBIT 19 at the Examination Before Trial of Matthew Barba.  Mr. Barba identified this

document on p. 70 of his Examination Before Trial transcript (**EXHIBIT "H"**) which document is Bates Stamped URS 157 through 246.

12.     Said document provides for indemnification to the CITY OF NEW YORK and its various agencies on p. URS 187 of the agreement (**EXHIBIT "G"**).  It is submitted that the agreement provides for supervision and inspection services (URS p. 160) as well as controlling the means and methods of construction of the construction contractor if said activity constitutes or creates a hazard.  (Article 1 Section D on URS p. 165).

13.     In addition URS is also, pursuant to said agreement, to have on site competent staff to monitor the work of each contractor and recommend courses of action to non-residential consultant personnel who shall recommend to owner when a contractor is not fulfilling its obligations or when other circumstances develop which adversely affect (or threaten to affect) the work and/or progress thereof (**EXHIBIT "G"** p. URS 168 para. 19c).

14.     This requirement includes rejection of work, the stop page of work or any other action that may be necessary or desirable under the circumstances.  (**EXHIBIT "G"** URS p. 00168 through 169 beginning with paragraph 19.)

15.     The contact requires the consultant, URS to indemnify and save harmless the CITY and its respective agencies for the work detailed hereinabove or for violation or failure to perform said work (p. URS 187 in **EXHIBIT "G"**).

16.     In addition, the contractor is to have in place insurance in the sum of not less than one million dollars per occurrence to protect the CITY OF NEW YORK and the departments of the CITY OF NEW YORK from and against all claims, losses or damages whether in contract or tort including injuries to persons or property whether such injuries or other acts are attributable to the negligence of the contractor its employees.  (URS p. 214 of **EXHIBIT "G"**).

## THE BASIS OF PLAINTIFF'S CLAIM

17.     Mr. Daza alleges that while working on the Uncle Leo barge performing maintenance to a crane by the reinstallation of cable through the crane block, that had been disconnected from the crane, the crane block rolled over onto plaintiff's leg and foot.  According to the plaintiff the crane block was wedged between two timbers of the crane mat at which point it was free standing with no cables attached to it.  It was unrigged in that position.  See the Examination Before Trial of JOHN DAZA attached hereto as **EXHIBIT "I"** p. 107.  Based upon the plaintiff's testimony the plaintiff was standing on the crane mats with the shackle of the crane block wedged between two timbers of the crane mat which was just below the level upon which plaintiff was standing.

18.     After the crane block rolled over onto plaintiff's ankle the plaintiff was not pinned under the crane block as a result of the incident (**EXHIBIT "I"** p. 112 line 16-20), see also testimony of Brian Nee p. 71 line 22-25 of **EXHIBIT "F"**.

19.     Brian Nee, plaintiff's foreman, testified that the crane block was removed from the crane the night before the incident (**EXHIBIT "F"** p. 62).

20.     The following day the crane block was lifted by the crane and was wedged between the crane mats at which point the crane was disconnected from the block so that the new cabling could be inserted through the crane block (**EXHIBIT** "F" p. 63-64).

21.     According to Mr. Nee the horseshoe shaped shackle at the bottom of the block was contacting the deck of the barge below the crane mats (**EXHIBIT "F"** p. 65).

22.     Just prior to the accident Brian Nee hooked a chain around the crane block and attached it the barge and Mr. Daza was to do likewise (**EXHIBIT "F"** p. 66-67).  While Mr.

Daza was in the process of attaching the other end of the chain to the barge it rolled over onto his leg and ankle.

23.     Mr. Nee further testified that when the crane block was stood up he directed the crane operator to leave the crane block in the position wedged between the crane mats rather than laying it down (**EXHIBIT "F"** p. 81-82).

24.     At the time of the cable change operation Brian Nee of PILE FOUNDATION was in charge of the job (**EXHIBIT "F"** p. 45) and stated that the cable had to be replaced because it was not long enough to perform the work (**EXHIBIT "F"** p. 44-45).

25.     In order to get onto the Uncle Leo barge where the incident occurred to perform this maintenance operation the men had to walk from the pier onto a foam barge, across the foam barge to a crane mat and transverse the crane mat from the foam barge to the Uncle Leo which was spudded in the East River (**EXHIBIT "F"** p. 47).

26.     It was during this recabling or maintenance operation that the crane block rolled over onto plaintiff's leg.  The plaintiff was not pinned under the crane block and he was slid out from under it (**EXHIBIT "F"** p. 71).

27.     During the performance of the work by PILE FOUNDATION the contractor would utilize the NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION lot adjacent to the East River Park Project as a storage area.  No work was performed on the NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION lot or any of the adjacent structures along the waterway near the lot (**EXHIBIT "F"** pp. 85-87).

28.     Mr. Nee stated that the crane block was standing wedged between the crane mats for 5-10 minutes prior to it rolling over.  When it did roll over it crushed and chipped the crane

mat wooden timbers but they did not need any replacement or repair as a result of the incident (**EXHIBIT "F"** pp. 98-99).

29.     During the course of the project Mr. Nee stated that he would speak to Mohamed Ayoub of THE NEW YORK CITY DEPARTMENT OF PARKS and Mr. Nee and Mr. Ayoub would converse routinely.  They would not discuss the daily activities but Mr. Ayoub would merely remind Mr. Nee to make sure that the piles were driven straight and that any cracks in the seawall were repaired.  Mr. Nee stated that these jobs were routinely performed and did not require Mr. Ayoub to remind him of these issues (**EXHIBIT "F"** pp. 99-100).  It should be further noted that only Mr. Nee gave Mr. Daza his instructions on a daily basis or possibly other supervisory employees of PILE FOUNDATION (**EXHIBIT "F"** p. 100).

30.     Mr. Daza testified in this litigation on June 9, 2011 and the following references are to Mr. Daza's testimony within **EXHIBIT "I."**

31.     Mr. Daza testified that at the time of the incident he was standing on the Uncle Leo that was moored in the East River approximately three barges out from the EDC lot from land (**EXHIBIT "I"** p. 60).

32.     On the day of the incident Mr. Daza testified that the old cable was removed from the crane block so that the new cable could be placed on the block and the block could be reattached to the crane (**EXHIBIT "I"** pp. 103-105).

33.     After the crane block was wedged between the timbers of the crane mat all shackles and cables were removed and it was free standing (**EXHIBIT "I"** pp. 107-108).

34.     As Mr. Daza was walking over to obtain the end of the new cable to recable the crane block he claims that the block rolled over onto his leg (**EXHIBIT "I"** p. 110).

35.     At no time did Mr. Daza note any defects in the timber mats that contributed to his accident (**EXHIBIT "I"** p. 116).

36.     At the time of the incident no construction activities were ongoing and the only job being performed was the maintenance on the crane block in recabling the crane block so that it could be utilized in future work activities (**EXHIBIT "I"** p. 119).

## THE ROLE OF URS AT THE PROJECT

37.     URS was hired at the project as a construction manager and provided a project manager onsite as part of its contractual obligations.  **EXHIBIT "G"** which is attached hereto is the Agreement between THE CITY OF NEW YORK DEPARTMENT OF PARKS AND URS.

38.     Mr. Barba testified that the URS contract (**EXHIBIT "G"**) was in effect at the time of the incident.  This contract was marked as EXHIBIT 19 at the Examination Before Trial of Mr. Barba whose testimony is attached hereto in its entirety as **EXHIBIT "H".**  (See Mr. Barba's testimony at p. 70).

39.     In addition to the terms and conditions of the URS contract Mr. Barba reviewed the PILE FOUNDATION contract between the CITY OF NEW YORK and PILE FOUNDATION and as Mr. Barba inspected the work of PILE FOUNDATION he would ensure that the work of PILE FOUNDATION was in compliance with the agreement (EXHIBIT "H" pp. 71-72).

40.     In addition Mr. Barba's job for URS was to oversee the construction project and report to the owner (CITY OF NEW YORK DEPARTMENT OF PARKS) any issues with quality assurance, cost, safety or any other issue in which the contractor was not in compliance. URS could also recommend a stop work order to THE CITY OF NEW YORK for any non-

compliant work or improperly performed work or the failure to comply with safety by the contractor (**EXHIBIT "H"** pp. 92-93).

41.     Mr. Barba testified that PILE FOUNDATION was permitted to utilize THE CITY OF NEW YORK ECONOMIC DEVELOPMENT CORPORATION (EDC) lot for a staging area but that the lot itself was not part of the construction project (EXHIBIT "H" p. 24).   PILE FOUNDATION was permitted to utilize the lot for approximately one year and then was requested to vacate the lot on numerous occasions by written correspondence (EXHIBIT "H" p. 25).

42.     Attached hereto as **EXHIBIT "J"** are copies of the correspondence issued to PILE FOUNDATION to vacate the EDC lot directed to PILE FOUNDATION prior to plaintiff's incident.

43.     As part of its work at the project URS hired a sub consultant, AECOM which is the entity utilized by URS to ensure quality, technical accuracy and timely completion of work at the project.   Attached hereto as **EXHIBIT "K"** is a copy of the contract between URS and DMJM + Harris, Inc., now known as AECOM (See **EXHIBIT "H"** p. 16).

44.     In addition to hiring AECOM as a sub consultant URS also hired Construction & Realty Safety Group.   This safety company would come to the jobsite once a month to log the activities on site including any non compliance with OSHA or other safety standards as well as making any recommendations with respect to housekeeping on barges if warranted (**EXHIBIT "H"** pp. 58-61).

45.     In addition to Mr. Barba attending several other site inspections Steve Santos of AECOM, the sub consultant of URS would also attend these inspections (**EXHIBIT "H"** p. 59).

46.     Following the incident URS conducted an investigation and prepared an accident report regarding the incident regarding JOHN DAZA.  As part of the report, a copy of which is attached hereto as **EXHIBIT "L"**, Mr. Barba was advised by Brian Nee, plaintiff's foreman that a boat went by and the wake of the boat caused the movement of the barge and the crane block to roll over from its upright position (See **EXHIBIT "L"** and Barba testimony **EXHIBIT "H"** pp. 66-67).

47.     It was Matthew Barba's responsibility from URS as the onsite consultant for THE NEW YORK CITY DEPARTMENT OF PARKS to ensure that the work was being performed correctly and if anything was improper with respect to quality or safety or where there was non compliance with permits that he was to immediately recommend to the owner a stop work order. If the City agrees with the stop work order it is e-mailed to the non compliant contractor and to URS who immediately ensures that compliance takes place as well as the work being stopped if necessary.  Essentially Mr. Barba would be the individual implementing the stop work order (**EXHIBIT "H"** pp. 91-92, p. 93 and pp. 95-96).

48.     The co-defendant AECOM testified in this litigation through Anibal Esteves Santos.  Mr. Santos as an employee of AECOM was hired at the project pursuant to contract with URS.  A complete copy of the testimony of Mr. Santos is attached hereto as **EXHIBIT "M."**

49.     Mr. Santos testified that the project manager for this particular jobsite was Matt Barba of URS with Mohamed Ayoub of THE CITY OF NEW YORK representing the client, THE NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION (**EXHIBIT "M"** Santos transcript pp. 15-16).   In addition, Mr. Santos stated that overall supervisory responsibilities were with URS (**EXHIBIT "M"** p. 16) and that URS was the sub consultant for Structural Marine Work under URS (**EXHIBIT "M"** p. 18).

50.     At no time was Mr. Santos aware of Mohamed Ayoub of THE CITY OF NEW YORK giving orders to Matt Barba or anyone else at the project (**EXHIBIT "M"** p. 19).

51.     Mr. Santos' job at the project was to monitor the marine related portions of the construction activities including demolition, bulkhead demolition, timber pile removal, steel pile installation, concrete pier caps and pre-cast concrete decking (**EXHIBIT "M"** p. 22.).

52.     Mr. Santos testified that PILE FOUNDATION did not tie up any barges to any of the bulkhead as everything was spudded along the waterfront in the East River (**EXHIBIT "M"** p. 41). In addition, the witness stated that the barges could not get any closer than approximately 50 feet at minimum from any of the bulkheads as a result of the river bottom causing the barges to bottom out if they came any closer than 50 to 75 feet to the bulkhead wall (**EXHIBIT "M"** p. 53).

53.     Mr. Santos indicated that PILE FOUNDATION was at one point requested to remove all materials and equipment from the EDC lot and THE CITY OF NEW YORK was assisting EDC in this process (**EXHIBIT "M"** p. 43). URS as the project management consulting firm was responsible for running the job and overseeing everything that comes to the job, that encompasses the job for THE CITY OF NEW YORK (**EXHIBIT "M"** p. 47).

54.     Matt Barba on behalf of URS as a project manager did perform project management services including walk throughs of the project and reported to the City on any issues of the project. This included management of the day to day operations as Mr. Barba would run meetings and deal with any field operations including schedules, delays, cost and interfacing with THE CITY OF NEW YORK (**EXHIBIT "M"** pp. 72-73).

55.     THE NEW YORK CITY DEPARTMENT OF PARKS testified in this litigation through Mohamed Ayoub.

56.     Mr. Ayoub was on site as a representative of THE CITY OF NEW YORK who coordinated the jobsite with the help of URS the contractor on site in charge of the construction. Mr. Ayoub's testimony is attached hereto in its entirety as **EXHIBIT "N"** wherein he testified at p. 10.

57.     Mr. Santos of AECOM would observe the work and report any problems to Mr. Ayoub.   AECOM was responsible for the marine portions of the work with URS being responsible for the landscaping portion of the project.   AECOM was hired by URS to perform the work at the project (**EXHIBIT "N"** p. 18).   When Mr. Ayoub inspected the work at the project he had no supervisory authority over the work or power to control the work (**EXHIBIT "N"** pp. 19-20).

58.     Mr. Ayoub's responsibility for the project included only the project which was from the face of the sea wall to the construction fence.   This was the area designated as the construction project and the limits of the construction site (**EXHIBIT "N"** pp. 22-23).

59.     At no time did Mr. Ayoub ever board one of the barges at the site but if necessary to take pictures of the sea wall work the witness would only use the walkway going to the barge (**EXHIBIT "N"** pp. 28-29).

60.     At no time was Mr. Ayoub allowed to stop work at the project and this authority did not rest with either URS or AECOM (**EXHIBIT "N"** p. 30).

61.     While PILE FOUNDATION was allowed to use the EDC lot for a storage area and to bring materials to its barges it was ultimately directed to be removed from the location to utilize other areas (**EXHIBIT "N"** pp. 38-45).

62.     Mr. Ayoub also testified that the project ended at the sea wall and that the East River is managed by the New York State Department of Environmental Conservation although

owned by the Federal Government.  As such THE CITY OF NEW YORK or the EDC had no

power or authority to have PILE FOUNDATION move any of its barges spudded in the East

River (**EXHIBIT "N"** p. 46).

   63. Based upon the foregoing facts the incident involving the plaintiff did not occur

on any property owned, operated or maintained by THE CITY OF NEW YORK, THE NEW

YORK CITY ECONOMIC DEVELOPMENT CORPORATION or THE NEW YORK CITY

DEPARTMENT OF PARKS & RECREATION and as such plaintiff's negligence and Labor

Law §200 claims must be denied in their entirety.

   64. In addition, the incident did not occur as a result of any fall from a height or from

a height differential and there is no applicable section of the Industrial Code of the State of New

York and as such  plaintiff's Labor Law §§240 and 241(6) are not applicable to this accident.

Dated: New York, New York
   September 21, 2011

          Respectfully submitted,

          HANNUM FERETIC PRENDERGAST
          & MERLINO, LLC

          By _____
            John E. Hannum (JH 5516)
          55 Broadway, Suite 202
          New York, New York 10006
          (212) 530-3900
          (212) 530-3910
          Attorneys for Defendants
          **THE CITY OF NEW YORK, THE NEW
          YORK   CITY   DEPARTMENT   OF
          PARKS & RECREATION, THE NEW
          CITY OF NEW YORK DEPARTMENT
          OF PARKS & RECREATION CAPITAL
          PROJECTS DIVISION AND
          THE NEW YORK CITY ECONOMIC
          DEVELOPMENT CORPORATION**